**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PHILLIP WOOD, : | Hon. Jerome B. Simandle |
| : | Civil Action No. 08-4515 (JBS) |
| Petitioner, : |  |
| : | **OPINION** |
| v. : |  |
| STATE OF NEW JERSEY, : |  |
| MICHELLE RICCI, : |  |
| Respondents. : |  |

**APPEARANCES:**

    PHILLIP WOOD, #847210A
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey  08625

**SIMANDLE**, District Judge

    Phillip Wood, a prisoner who is confined at New Jersey State Prison, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging the constitutionality of two orders entered in the Law Division of the Superior Court of New Jersey, Burlington County, in his commitment proceeding.  For the reasons expressed below, this Court will dismiss the Petition for lack of subject matter jurisdiction and decline to issue a certificate of appealability.

**I.  BACKGROUND**

    In 1981, the Superior Court of New Jersey, Law Division, Burlington County, found Petitioner not guilty by reason of insanity ("NGI") of felony murder and aggravated arson.  See In

re Commitment of Phillip A. Wood, 2007 WL 4356135 (N.J. Super., App. Div., Dec. 12, 2007).  He was involuntarily committed to Ancora Psychiatric Hospital and received periodic review hearings, as required by State v. Krol, 68 N.J. 236 (1975).[1]

On August 5, 1999, he was charged with setting fire to bed linens.  See In re Wood, 2007 WL 4356135 at *1.  On December 22, 1999, while confined at Ancora, Petitioner was arrested for third-degree aggravated assault of his psychiatrist.  Id.  Based on a guilty plea, on May 3, 2000, the Law Division sentenced Petitioner to three years in prison on the assault charge and to a concurrent 18-month sentence on the criminal mischief charge. Id.

On July 21, 2000, the Law Division in Burlington County entered a consent order in the Krol proceeding which suspended Petitioner's Krol hearings while he was serving his sentence and provided that 90 days prior to his parole or release, the Department of Corrections ("DOC") would notify the court and a Krol hearing was to be scheduled.  Id.  On August 2, 2002, the DOC advised the prosecutor that it did not see a need for Petitioner's involuntary commitment to the Anne Klein Forensic

---

[1] "When a person accused of a crime is acquitted by reason of insanity, the accused may be held in continued confinement if the person is a danger to self or others and is in need of medical treatment.  We describe such person as being on Krol status."  In re W.K., 159 N.J. 1, 2 (1999) (citing Krol, 68 N.J. 236).

Center or the Special Treatment Unit, but noted that since Petitioner was on Krol status, a Krol hearing should be scheduled.  Id.

On October 18, 2002, the Law Division in Burlington County entered a second consent order in the Krol proceeding which provided that the maximum limit on Wood's Krol supervision would be thirty years; ordered that Petitioner was to be transported to Ancora for a psychiatric evaluation; vacated the suspension of Krol review hearings; and scheduled a Krol status hearing for December 6, 2002.  Id.  The Krol hearing was conducted before the Law Division, Burlington County, in December 2002; the judge found that Petitioner would pose a danger to himself, others, and property if released to the community, and ordered Petitioner committed to Ancora.  Id.

Petitioner appealed the orders dated July 21, 2002, and October 18, 2002, to the Appellate Division of the Superior Court of New Jersey.  See In re Wood, 2007 WL 4356135 at *1. Petitioner raised one ground: "THE TRIAL COURT ERRONEOUSLY SUSPENDED MR. WOOD'S KROL HEARINGS PENDING RELEASE FROM PRISON, DENYING HIM HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION, BECAUSE EITHER MR. WOOD'S KROL STATUS SHOULD HAVE BEEN TERMINATED OR HE SHOULD HAVE RECEIVED KROL HEARINGS WHILE IN PRISON."  Id. at *2.  On December 12, 2007, the Appellate Division affirmed both orders.  The court noted that, although

state law required "periodic reviews of the commitment no later than (1) three months from the date of the first hearing, and (2) nine months from the date of the first hearing, and (3) 12 months from the date of the first hearing, and (4) at least annually thereafter, if the patient is not sooner discharged," id. (citing N.J. Ct. R. 4:74-7(f)(2)), the Law Division's orders had properly relaxed this rule. Id. at *3. "If Wood had been afforded a Krol hearing while imprisoned, he would not have been released, even if it were determined he was no longer a danger to self or others. Because there was no purpose to be accomplished by a Krol review while Wood was incarcerated, a relaxation of R. 4:74-7 was appropriate, did not violate Wood's constitutional rights, and was in accordance with his consent." Id. at *3. The Appellate Division also rejected Wood's argument that his transfer to prison for service of the new criminal sentence necessitated termination of his Krol status:

> Krol found that due process and equal
> protection required persons found NGI to be
> treated similarly to civil committees.  As
> such, persons found NGI should not be
> institutionalized unless necessary to prevent
> danger to self or the community.  N.J.S.A.
> 2C:4-8(c) echoes this sentiment by ensuring
> that "[n]o person committed under this
> section" be placed in a correctional
> institution rather than a treatment facility
> for the crime which they were found NGI.  The
> Legislature clearly did not intend to create
> a loophole for NGI committees to circumvent
> their maximum period of Krol confinement by
> forcing the State to choose whether to keep a
> committee on Krol status or to prosecute him

>           for an offense which may result in a
>           relatively short sentence.  It is clear the
>           Legislature intended the prohibition in
>           N.J.S.A. 2C:4-8(c) to be with reference to
>           the offense for which the committee was found
>           NGI and not for other criminal acts.

Id. (citations omitted).

On March 12, 2008, the New Jersey Supreme Court denied Wood's petition for certification.  (Pet., attachment.)

In the meantime, on March 5, 2007, the Superior Court of New Jersey, Law Division, Camden County, imposed a new four-year sentence based on Petitioner's plea of guilty to third-degree assault, and Petitioner was confined to New Jersey State Prison, where he remains incarcerated.  See Wood v. Attorney General of State of New Jersey, Civil No. 08-2116 (RMB) petition, ¶¶ 1-4 (D.N.J. filed April 30, 2008).  Petitioner's projected release date is December 2, 2009.  See N.J. Dep't of Corrections Inmate Locator, https://www6.state.nj.us/DOC_Inmate/details?x=1192181&n=0 (last accessed Feb. 20, 2009).

On April 30, 2008, Petitioner filed a § 2254 petition in this Court challenging the March 5, 2007, conviction and sentence.  Id.  After appointing counsel for Petitioner, on August 11, 2008, Judge Renée Marie Bumb dismissed the petition for failure to exhaust state court remedies, pursuant to 28 U.S.C. § 2254(b)(1)(A) and (B)(I).  Id.  On October 17, 2008, the United States Court of Appeals denied Wood's application for a

certificate of appealability.  See Wood v. Attorney General NJ, C.A. No. 08-3552 order (3d Cir. Oct. 17, 2008).

    Petitioner filed the § 2254 Petition presently before this Court on September 5, 2008.  The Petition challenges the Law Division orders which suspend Krol status hearings while Petitioner is incarcerated (the July 21, 2000, order), and reinstate Krol status hearings 90 days prior to his release from prison (the October 18, 2002, order).[2]  The Petition challenges these orders on the following grounds:

> Ground One: ONCE THE JUDGE RELEASED PETITIONER FROM SUPERVISORY OF THE COURT UNDER KROL STATUS BY SUSPENDING KROL HEARINGS IT CREATED A DOUBLE JEOPARDY BY RECOMMITTING HIM.
>
> Supporting Facts: The Court erroneously suspended Krol status in order to remove petitioner from state hospital and place him in the prison system.
>
> Ground Two: PETITIONER BEING RECOMMITTED UNDER KROL STATUS WHEN HE DID NOT QUALIFY FOR CIVIL COMMITMENT IS IN VIOLATION OF U.S. CONST. AMEND. 14.
>
> Supporting Facts: Petitioner was placed back into Krol status following serving a prison term where he should at that time been released from custody back into society.

---

[2] This Court is aware that Petitioner's submissions include reference to his alleged involuntary medication by prison officials.  However, because a civil rights complaint raising this claim is pending in this District, see Wood v. Hayman, Civil No. 08-4797 (MLC) (D.N.J. filed Sept. 26, 2008), and because involuntary medication allegations do not implicate the fact or duration of Petitioner's confinement, this Opinion will not address those allegations.

>Ground Three: HAVING RECOMMITTED PETITIONER WITHOUT THE HAVING ANY INTEREST IN PARENS PATRIAE OR POLICE POWER IN OVERRIDING PETITIONER'S LIBERTY INTEREST VIOLATES FOURTEENTH AMEND. OF U.S. CONST.
>
>Supporting Facts: The state had no interest in protecting the community nor to have petitioner committed for treatment.  It appears the state's only interest was to inflict punishment on an insane person.
>
>Ground Four: THE JUDGE WAS WRONG TO RECOMMIT PETITIONER FOR EVALUATION JUST BECAUSE HE HAD COMPLETED HIS PRISON TERM.
>
>Supporting Facts: Just because a person has just served a prison term does not give the state a right to civilly commit him for an evaluation upon completion of term.
>
>Ground Five: PETITIONER WAS DENIED RIGHT TO CROSS-EXAMINE STATE'S WITNESS.

(Pet. ¶ 12.A. - 12.E.)

Attached to the § 2254 Petition are a letter brief and appendix containing the following:  order issued by the New Jersey Supreme Court on March 12, 2008, which denies certification in In re Civil Commitment of Phillip A. Wood; letter dated November 12, 2002, to Benito Marty from Deputy Public Defender Theodore S. Novak; and letter dated August 2, 2002, to Assistant Prosecutor Gladys Rodriguez from the New Jersey Department of Corrections.

## II.  DISCUSSION

A.  Standard of Review

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994). Habeas Rule 2(c) requires a § 2254 petition to "specify all the grounds for relief available to the petitioner," "state the facts supporting each ground," "state the relief requested," be printed, typewritten, or legibly handwritten, and be signed under penalty of perjury.  28 U.S.C. § 2254 Rule 2(c).

Habeas Rule 4 requires a judge to sua sponte dismiss a § 2254 petition without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." 28 U.S.C. § 2254 Rule 4.  Thus, "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."  McFarland, 512 U.S. at 856. Dismissal without the filing of an answer or the State court record has been found warranted when "it appears on the face of the petition that petitioner is not entitled to relief." Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989); see also McFarland, 512 U.S. at 856; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may

be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").[3]

The Supreme Court explained the pleading requirements under the Habeas Rules as follows:

> Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is, and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 . . . (1957). Habeas Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." See also Advisory Committee's note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important . . . ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)) . . . .
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in district court," the court must summarily dismiss the petition

---

[3] For example, the Third Circuit has held that vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court. Thomas, 221 F.3d at 437; United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

9

> without ordering a responsive pleading.  If
> the court orders the State to file an answer,
> that pleading must "address the allegations
> in the petition."  Rule 5(b).

Mayle v. Felix, 545 U.S. 644, 655 (2005).

B.  Subject Matter Jurisdiction

Section 2254(a) of Title 28 of the United States Code provides:

> [A] district court shall entertain an
> application for a writ of habeas corpus in
> behalf of a person in custody pursuant to the
> judgment of a State court only on the ground
> that he is in custody in violation of the
> Constitution or laws or treaties of the
> United States.

28 U.S.C. § 2254(a).

To invoke habeas corpus review by a federal court, the petitioner must satisfy two jurisdictional requirements:  the status requirement that the petitioner be "in custody," and the substance requirement that the petition challenge the legality of that custody on the ground that it is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); see also Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).

Petitioner was incarcerated at New Jersey State Prison serving the four-year sentence imposed on March 5, 2007, at the time he filed the Petition before this Court.  Petitioner is certainly "in custody" for the purpose of challenging the March

10

5, 2007, criminal conviction and sentence.  But the Petition before this Court does not challenge the March 5, 2007, conviction and sentence.  Rather, the Petition challenges orders entered in the Krol proceeding which suspend Krol hearings during Petitioner's incarceration and reinstate Krol hearings 90 days before his release from incarceration.  Under the challenged orders, Petitioner's Krol dangerousness hearings would resume within 90 days of Petitioner's release from incarceration on his current criminal sentence, which is protected to be December 2, 2009.  As the "habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed,"  Maleng, 490 U.S. at 490-91; see also Spencer v. Kemna, 523 U.S. 1, 7 (1998); Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004), and Petitioner's current incarceration is not due to the orders he challenges in this Petition, this Court must consider whether Petitioner satisfies the "in custody" requirement for the purpose of challenging those orders.[4]

A prisoner may satisfy the "in custody" requirement where he challenges future confinement or detention.  See, e.g., Braden v. 30th Judicial Circuit Ct. of Kentucky, 410 U.S. 484, 488-89 (1973) ("[o]ur decision in Peyton v. Rowe discarded the prematurity doctrine, which had permitted a prisoner to attack on

---

[4] "In making a custody determination, a court looks to the date that the habeas petition was filed."  Barry v. Bergen County Prob. Dep't, 128 F. 3d 152, 159 (3d Cir. 1997).

11

habeas corpus only his current confinement, and not confinement that would be imposed in the future"). In Peyton v. Rowe, 391 U.S. 54, 67 (1968), the Supreme Court ruled that "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of § 2241(c)(3)." See also Garlotte v. Fordice, 515 U.S. 39, 43 (1995) ("a person incarcerated under consecutive sentences remains 'in custody' under a sentence that (1) has been completed in terms of prison time served, but (2) continues to postpone the prisoner's date of potential release").

But in this case Petitioner is not challenging future detention at Ancora pursuant to the challenged orders. Indeed, neither of the challenged orders requires Petitioner's detention when he is released from prison. The July 21, 2000, order authorizes the suspension of periodic Krol status hearings while Petitioner is incarcerated on a state sentence, and the October 18, 2002, order authorizes the reinstatement of Krol status hearings 90 days before his release from incarceration. "Custody is established whenever a restraint on liberty is *either* actual or imminent." Barry v. Bergen County Prob. Dep't, 128 F. 3d 152, 161 (3d Cir. 1997) (emphasis in original). The question here is whether either of the challenged orders imposes an imminent restraint on Petitioner's liberty when his criminal sentence expires.

12

The second order requires a <u>Krol</u> status hearing - which will determine whether Wood may be confined at Ancora because he "is a danger to self or others and is in need of medical treatment." <u>In re W.K.</u>, 159 N.J. 1, 2 (1999) (citing <u>Krol</u>, 68 N.J. 236).  It is possible that Wood will again be committed to Ancora upon the expiration of his sentence, as a result of the <u>Krol</u> hearing required by the challenged order.  But it is also possible that Petitioner will not be confined on <u>Krol</u> status, and will be released when his sentence expires.  Given that the <u>Krol</u> hearing could go either way, Petitioner's future commitment to Ancora at the expiration of his sentence on December 2, 2009, is not imminent, but is "a speculative possibility that depends on a number of contingencies over which he has no control[, and] the unfolding of events may render the entire controversy academic." <u>Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County</u>, 411 U.S. 345, 351-52 (1973).

As the Court emphasized in <u>Hensley</u>,

> The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restrains on individual liberty.  Since habeas corpus is an extraordinary remedy whose operation is to a large extent uninhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate.

13

Id. at 351.[5]

The orders challenged in this Petition do not impose any future restraint on Petitioner's liberty because future confinement at Ancora is not inevitable.[6] Thus, Petitioner is not "in custody" as a result of the challenged orders, and this Court lacks jurisdiction over the Petition challenging the constitutionality of those orders. See Spring v. Caldwell, 692 F. 2d 994 (5th Cir. 1982) (an arrest warrant, issued as result of petitioner's willful refusal to pay a fine imposed as a sentence, does not satisfy the "in custody" requirement in a case challenging the constitutionality of statute imposing the fine); Edmunds v. Won Bae Chang, 509 F. 2d 39, 41 (9th Cir. 1975) (a

---

[5] The petitioner in Hensley was convicted of a misdemeanor and was sentenced to serve one year in jail and pay a fine. Subsequent to his conviction, he was released on his own recognizance and execution of his sentence of imprisonment was stayed while he sought habeas relief. The Supreme Court held that he was "in custody" to challenge the conviction because his liberty was restrained as a result of conditions attached to release on his own recognizance, and he avoided incarceration pursuant to the sentence only by virtue of a stay pending resolution of the proceeding. "The State has emphatically indicated its determination to put him behind bars, and the State has taken every possible step to secure that result . . . . The petitioner has been forced to fend off the state authorities by means of a stay, and those authorities retain the determination and the power to seize him as soon as the obstacle of the stay is removed." Hensley, 411 U.S. at 351-52.

[6] Unlike the situation in Hensley, dismissal of this Petition for lack of jurisdiction will not merely "postpone his habeas corpus action," since Wood may not be confined at all in Ancora as a result of the Krol hearing. Hensley, 411 U.S. at 352.

14

person against whom a fine has been imposed, who is threatened with the possibility of confinement by a pending contempt proceeding based on failure to pay the fine, is not "in custody" because the threat of confinement is "no more than a speculative possibility"); Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 635 (D.N.J. 2008) (challenge to a future parole eligibility hearing is too speculative to warrant habeas relief); Furey v. Hyland, 395 F. Supp. 1356 (D.N.J. 1975) (sentence of one year in prison that is suspended does not satisfy "in custody" requirement).

C.  Certificate of Appealability

Because Petitioner has not made a substantial showing of the denial of a constitutional right, no Certificate of Appealability will issue pursuant to 28 U.S.C. § 2253(c).  See Fed. R. App. P. 22(b)(1).

### III.  CONCLUSION

For the foregoing reasons, this Court dismisses the Petition and declines to issue a Certificate of Appealability.

                                **s/ Jerome B. Simandle**
                                **JEROME B. SIMANDLE, U.S.D.J.**

DATED:  **February 20**   , 2009